**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Patrick E. Dullen

        v.                                  05-cv-139-PB

Cheshire County, et al.

**REPORT AND RECOMMENDATION**

Proceeding *pro se* and *in forma pauperis*, plaintiff Patrick
E. Dullen brings this action pursuant to 42 U.S.C. § 1983,
alleging that defendants have abridged his rights under the
First, Eighth and Fourteenth Amendments to the United States
Constitution (document no. 1).  Named as defendants are Cheshire
County, Cheshire County Department of Corrections ("CCDOC") and
four CCDOC employees and/or contractors: Superintendent Richard
N. Van Wickler; Captain Robert Cook; Dr. Stern; and Nurse Carol
Anne Rochelau.

The complaint is before me for preliminary review to
determine whether, among other things, it states a claim upon
which relief may be granted.  See 28 U.S.C. § 1915A; U.S.
District Court for the District of New Hampshire Local Rule
("LR") 4.3(d)(2).  For the reasons stated below, I find that

Dullen has alleged the following claims: (1) Eighth Amendment claims premised upon denial of adequate medical care against Stern and Rochelau; and (2) Eighth Amendment claims premised upon denial of adequate dental care against Rochelau and Cook.  I recommend dismissal of all remaining claims.

### Standard of Review

In reviewing a *pro se* complaint, this Court must construe the pleading liberally and in favor of the *pro se* litigant.  <u>See Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  <u>See Eveland v. Director of CIA</u>, 843 F.2d 46, 49 (1st Cir. 1988).

### Background

Construing the allegations in the light most favorable to

2

Dullen, the material facts are as follows.  Dullen is currently incarcerated as a federal prisoner at the Franklin County House of Corrections in Greenfield, Massachusetts.  The claims in this action arise from deprivations that occurred during his previous incarceration at the CCDOC where he allegedly was denied adequate medical and dental care and meaningful access to the courts.

<u>Denial of Adequate Medical
and Dental Care</u>

Upon his arrival at the CCDOC during the last week of April or first week of May in 2004, Dullen was interviewed by Nurse Rochelau and informed her of his physical injury and medical needs.  Although the record is silent as to the exact nature of his medical condition and treatment provided, Dullen appears to suffer from an elbow injury and related pain.  He has provided a list of treating doctors[1] who prescribed him the following medications beginning in November 2002: (1) Ultram (150 mgs., three times a day); Elavil (100 mgs. at bedtime); Neurontin 800

---

[1]Dullen claims to have received treatment from the following doctors and medical facilities: Drs. San Vicente, Van Wanslaben and Jobst of Dartmouth-Hitchcock Medical Center; Grafton County Department of Corrections Medical Department; Cottage Hospital Pain Clinic; Onondaga County Justice Center Medical Unit; Upstate Medical Center; and Franklin County House of Corrections Medical Department.

mgs., three times a day); and Motrin (800 mgs. three times a day). According to Dullen, defendants were in possession of the medical records from his treating doctors and were aware of his injury and need for prescribed medications.

Following his interview with Rochelau, Dullen was evaluated by Dr. Stern, a CCDOC physician. Stern prescribed Ultraset, Neurontin and Elavil, allegedly in doses 1/4 to 1/3 less than that prescribed by Dullen's prior treating doctors. Despite Dullen's constant complaints of pain, Stern and Rochelau repeatedly denied him adequate pain medication. Stern recommended that Dullen undergo an MRI and, upon reviewing the test results, informed him that he suffered from a critical medical condition that required immediate spine or neck surgery. Stern allegedly advised Dullen that without the surgery he would risk paralysis. Rochelau concurred with Stern's recommendation.

On July 23, 2004, Dullen was examined by Dr. Jenkins, a neurosurgeon affiliated with the Dartmouth–Hitchcock Medical Center, who rendered a medical diagnosis differing from that rendered by Stern. According to Jenkins, Dullen suffered from an elbow injury that only required elbow surgery. In bringing this action, Dullen alleges that defendants' misdiagnosis of his

medical condition, recommendation for unnecessary surgery and denial of adequate pain medication rise to the level of Eighth Amendment violations.

In addition to his medical care claims, Dullen alleges that defendants have denied him adequate dental care by failing to provide him with replacement dentures.  Upon his arrival at the CCDOC, Dullen informed Rochelau that his dentures were loose and needed to be relined.  He was subsequently evaluated by a dentist who concluded that his existing dentures were beyond repair and needed to be replaced.  Despite the dentist's recommendation, Dullen was denied replacement dentures and any subsequent dental visits.  Defendants' acts and omissions allegedly rise to the level of Eighth Amendment violations.

<u>Denial of Access to the Courts</u>

Lastly Dullen claims that defendants denied him meaningful access to the courts by providing him with inadequate and obsolete library resources.  He claims that his right of access to the courts was further violated when defendants monitored a telephone call to his attorney and interfered with his privileged attorney-client communications.  Defendants' actions allegedly rise to the level of First and Fourteenth Amendment violations.

**Discussion**

I.  <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Dullen's Section 1983 action is that prison officials abridged his Eighth Amendment[2] rights by denying him adequate medical and dental care and abridged his First and Fourteenth Amendment rights by denying him access to the courts.[3]

---

[2]While the provisions of the Eighth Amendment do not extend to pretrial detainees, the Due Process Clause of the Fourteenth Amendment provides them with rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner.  <u>See</u> <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002).

[3]To the extent Dullen, a federal prisoner, alleges a due process violation stemming from his prison transfer, I conclude that he has failed to state a cognizable claim.  "[N]either the Constitution nor the applicable federal statute grants [a

A.   <u>Denial of Adequate Medical Care</u>

Dullen alleges that Stern and Rochelau have abridged his Eighth Amendment rights by withholding essential medical care. To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>See</u> <u>Estelle</u>, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>   <u>See</u> <u>also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1993).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Estelle</u>, 429 U.S. at 104-05.  "A 'serious medical

_____

prisoner] a liberty interest in the location of his place of confinement sufficient to invoke the protections of the Due Process Clause."  <u>Fermin-Rodriguez v. Westchester County Jail Med. Pers.</u>, 191 F. Supp. 2d 358, 363 (S.D.N.Y. 2002)(citing 18 U.S.C.A. § 3621 (b), which states that "The Bureau [of Prisons} may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another.")

need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care. First, Dullen has described a serious medical condition and immediate need for prescribed medications in order to treat an elbow injury and related pain.  Second, he has demonstrated deliberate indifference with respect to Stern and Rochelau by alleging that once they had knowledge of his serious medical needs and history, they nevertheless denied him adequate medical care or failed to ensure that he received proper care.  When Dullen arrived at the CCDOC, Stern and Rochelau repeatedly denied him sufficient pain medication despite his constant complaints of pain.  If true, the allegations demonstrate that defendants' acts and omissions prevented him from receiving prompt and essential medical treatment for a serious condition.  Accordingly, I find that he has stated Eighth Amendment claims premised upon the

denial of adequate medical care against Stern and Rochelau.

      B.   <u>Denial of Adequate Dental Care</u>

Dullen alleges that Rochelau and Cook have abridged his Eighth Amendment rights by withholding essential dental care. The denial of dental care may give rise to a constitutional violation when the denial results in a substantial risk of serious harm to a prisoner.  <u>See</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1243–44 (11th Cir. 2003)(need for dental care combined with the effects of not receiving it may give rise to an Eighth Amendment claim); <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998)(finding serious dental need where plaintiff alleged extreme pain, deterioration of his teeth and an inability to eat properly); <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995)(delay in dental care coupled with knowledge of patient's pain can support Eighth Amendment claim).

The standard of deliberate indifference is met only when the prison official subjectively "knows of and disregards an excessive risk to inmate health or safety."  <u>Farmer</u>, 511 U.S. at 837.  As stated previously, in order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." Id.

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate dental care. First, Dullen has described a serious condition, the need for replacement dentures.  Second, he has demonstrated deliberate indifference by alleging that once Rochelau and Cook had knowledge of his serious dental needs, they nevertheless failed to provide him with new dentures and adequate dental care.  Upon his arrival at the CCDOC, Dullen informed Rochelau that he wore dentures and needed them relined because they were loose.  The CCDOC located a dentist who was unable to provide the necessary care but confirmed that Dullen's dentures were unable to be repaired and needed to be replaced.  Correspondence of July 2004 reveals that Dullen requested an appointment to see a dentist and informed Cook that a previous dentist recommended replacement dentures and that his current dentures were unusable.  Even though Dullen was given approval for new dentures, Rochelau and Cook failed to schedule a dental appointment so that he could receive the necessary care.  If true, the allegations demonstrate that defendants' acts and omissions prevented Dullen from receiving adequate treatment for a serious dental need.

Accordingly, I find that Dullen has stated Eighth Amendment claims premised upon the denial of adequate dental care against Rochelau and Cook.

      C.   Denial of Access to the Courts

      Construed liberally, the complaint alleges that defendants have abridged Dullen's First and Fourteenth Amendment right to meaningful access to the courts by providing him with inadequate and obsolete library resources and interfering with his attorney-client communications.[4]

      It is undisputed that inmates have a constitutionally protected right of meaningful access to the courts.  See Bounds v. Smith, 430 U.S. 817, 828 (1977); Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000).  This right only "'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"  Carter v. Fair,

---

     [4]Dullen alleges that defendants violated his attorney-client privilege by monitoring telephone calls to his attorney.  I construe his allegations to allege a claim for denial of access to the courts.  See Campbell v. Miller, 787 F.2d 217, 225-26 (7th Cir. 1986)(interference in legal communications between prisoner and counsel implicates Sixth Amendment right of access to the courts).

786 F.2d 433, 435 (1st Cir. 1986)(quoting <u>Bounds</u>, 430 U.S. at 828)).

While a prison inmate retains a right of access to the courts, to establish a claim he must allege that he suffered actual injury as a result of defendants' actions.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).  An inmate cannot establish relevant actual injury simply by alleging that "his prison's law library or legal assistance program is subpar in some theoretical sense."  <u>Id.</u> at 351.  He must demonstrate that the alleged shortcomings in the law library or legal assistance program "hindered his efforts to pursue a legal claim."  <u>Id.</u>  ("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.").

A prison regulation or practice may interfere with a fundamental constitutional right of access to the courts if it bears a rational relation to legitimate penological interests.

12

See <u>Overton v. Bazzetta</u>, 123 S. Ct. 2162, 2167 (2003).  Thus,
even if Dullen is able to establish that a challenged policy
actually impedes his right to access the courts, he is not
entitled to relief if the policy satisfies this requirement.

Dullen alleges that the prison law library resources are
inadequate and obsolete, however, he does not allege that he
suffered actual injury as a result of the inadequacies.  There is
no indication that any deficiencies in the prison law library
resources resulted in an interruption or delay of his pending or
contemplated litigation or otherwise hindered his efforts to
pursue his legal claims.  To the contrary, the record shows that
Dullen has filed this action and a prior civil rights action in
this Court.  Because he has not demonstrated any injury that
resulted from the alleged deficiencies in the prison law library,
I conclude that he has failed to state sufficient facts to
support a claim premised upon denial of access to the courts.
Accordingly, I recommend that this claim be dismissed in its
entirety.

II.  <u>Municipal Liability</u>

Construed liberally, the complaint names Cheshire County and
the CCDOC, a municipal entity, as defendants in this action.

13

Municipalities and local government entities are "persons" within
the meaning of Section 1983.  See Monell, 436 U.S. at 690.  A
municipality or municipal entity cannot be held liable under
Section 1983 on a theory of *respondeat superior* or vicarious
liability; rather the municipality itself must proximately cause
the constitutional injury, through promulgation or tacit approval
of a policy or custom.  See City of Canton v. Harris, 489 U.S.
378, 385 (1989).  To state a viable Section 1983 claim, a
plaintiff must allege in substance that the challenged municipal
custom or policy was the "moving force" behind the constitutional
violations.  See Board of the County Comm'rs v. Brown, 520 U.S.
397, 404 (1997); McCabe v. Life-Line Ambulance Serv., 77 F.3d
540, 544 (1st Cir. 1996) (citations omitted).

     If Dullen intends to pursue claims against Cheshire County
and the CCDOC he must, at a minimum, allege that his
constitutional deprivations were the product of a municipal
custom or policy.  Even liberally construing the complaint, I
cannot reasonably conclude that the wrongful conduct ascribed to
the defendants was the product of any unconstitutional municipal
custom or policy.  Instead, the complaint plainly alleges that
the wrongful conduct to which Dullen was subjected resulted from

the actions taken by individual defendants and not as the result of a policy statement, ordinance, regulation or officially adopted decision.  See Monell, 436 U.S. at 690.  Nothing in the complaint demonstrates how Cheshire or the CCDOC were "moving forces" behind the actions or omissions by the defendants. Accordingly, I conclude that the complaint fails to state a viable claim premised upon municipal liability and, therefore, recommend that Cheshire County and the CCDOC be dismissed from this action.

Construed liberally, the complaint names each defendant in his or her official capacity as an officer or employee of the CCDOC.  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55. See also Brandon v. Holt, 469 U.S. 464, 471 (1985)(suits against parties in their official capacities treated as suits against the municipality).  Because I find no municipal liability as to Cheshire County and the CCDOC, I extend that reasoning to Stern, Rochelau and Cook and conclude that the official capacity claims against them fail.

**Conclusion**

For the reasons stated above, I find that Dullen has alleged the following claims: (1) Eighth Amendment claims premised upon denial of adequate medical care against Stern and Rochelau; and (2) Eighth Amendment claims premised upon denial of adequate dental care against Rochelau and Cook.  I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: June 23, 2005

cc:   Patrick E. Dullen, *pro se*